**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CAROL M. MURPHY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 04 C 6361** |
| ) | |
| **v.** ) | **Mag. Judge Michael T. Mason** |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration** ) | |
| ) | |
| **Defendant,** ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Claimant, Carol Murphy ("Murphy" or "claimant") has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Murphy's claim for Disability Insurance Benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423(d). The Commissioner filed a cross-motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). For reasons set forth below, Murphy's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied and Murphy's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) is denied. This case is remanded to the ALJ for further proceedings consistent with this opinion.

## BACKGROUND

### Procedural History

Murphy filed an application for Disability Insurance Benefits ("DIB") on November

29, 2001. (R. 42-44). Her application and subsequent request for reconsideration were both denied. (R. 19-27). Murphy then requested and was granted a hearing on April 1, 2004 before ALJ Michael R. McGuire. (R. 28, 223). Murphy and a vocational expert ("VE"), Julie Bose, testified at the hearing. On April 22, 2004, ALJ McGuire issued a written opinion denying Murphy's request for benefits. (R. 10-14). The Appeals Council denied her request for review and ALJ McGuire's decision became the final decision of the Commissioner. *See Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Murphy subsequently filed this action in the district court.

**Medical Evidence**

Murphy injured her right thumb at work on April 28, 2001 when she struck her thumb on a steel box. (R. 125). On May 7, 2001, she received treatment from Dr. McClellan. (*Id.*). Claimant complained of pain, throbbing and swelling. (*Id.*). Dr. McClellan observed tenderness over the right thumb ulnar collateral ligament at the metacarophalangeal ("MCP") joint, with instability. (*Id.*). The record indicates that Murphy had gamekeeper's thumb or a partial rupture of the ulnar collateral ligament at the right thumb MCP joint. (*Id.*). Dr. McClellan prescribed a thumb spika cast. (*Id.*).

X-rays from June 2001 indicate status post fracture with ligamentous tear. (R. 126). In July 2001, Murphy complained of right hand and forearm throbbing and numbness in the right thumb and index finger. (R. 129). Dr. McClellan ordered occupational therapy, an MRI and electromyogram tests. (R. 128, 131-33). Both tests were normal. (*Id.*). The occupational therapist noted some improvement but indicated that claimant still had functional limitations due to pain. (R. 128). In August 2001, claimant continued to complain

of pain when writing. (R. 133). In October 2001, Murphy complained of weakness and soreness in her right thumb. (R. 135). Dr. McClellan concluded that the gamekeeper's thumb had not improved and discussed a collateral ligament reconstruction with the claimant. (*Id.*). He diagnosed a right thumb ulnar collateral ligament rupture and scheduled Murphy for surgery. (R. 94).

On November 17, 2001, Dr. McClellan performed a reconstruction of claimant's right thumb, MCP joint, ulnar lateral ligament with palmaris longus tendon graft. (R. 109-110). Claimant's thumb was placed in splint and pain medication was prescribed. (R. 108). In December 2001, Dr. McClellan prescribed physical therapy. (R. 170). The records indicate that while Murphy's progress was essentially normal from February through June 2002, she was experiencing pain and range of motion limitations in the affected area. (R. 156-169). Dr. McClellan prescribed more pain medication and physical therapy in February and March 2002. (R. 165, 168).

In April 2002, a right hand x-ray was essentially normal except for a bone cyst. (R. 187). That month, Murphy was released for light duty work with restrictions on using her right hand. (R. 161). Two months later, in June 2002, Dr. McClellan released Murphy to return to work and discharged her from his active care. (R. 156-157). In July 2002, the claimant returned to Dr. McClellan complaining that her symptoms were persisting. (R. 152). Murphy complained of pain and indicated that aggravating factors included writing and grasping/gripping. (*Id.*). Dr. McClellan observed limitations in her range of motion and tenderness at the thumb MCP joint. (*Id.*). He prescribed further diagnostic testing and pain medication. (R. 152-154). The results of an MRI and EMG were essentially normal showing an intact ligament but revealed the probable presence of granulation tissue. (R.

181, 183, 184).

From August 2002 to December 2002, medical records indicate that the claimant continued to complain of pain. (R. 140-151). Dr. McClellan prescribed pain medication, occupational therapy and a hand splint. (*Id.*). In October 2002, he noted that it was possible that the surgical graft had failed. (R. 143). In December 2002, Dr. McClellan continued to observe tenderness with decreased range of motion. (R. 140-141). Murphy complained of pain, aggravated by motion, writing and grasping/gripping. (*Id.*). Dr. McClellan noted a mildly unstable radial collateral ligament. (*Id.*). In January 2003, Dr. McClellan noted a possible sensory nerve neuroma (growing tumor) and administered a trigger point injection for pain. (R. 138-139).

On January 31, 2003, claimant underwent a second surgery to fuse the first metacarpal joint of the right hand. (R. 197). Murphy began pain management treatment at the University of Illinois Chicago Medical Center ("UIC") that same month. (R. 195-197). From March 2003 to March 2004, Murphy received treatment from UIC's orthopedic clinic, pain management clinic, neurology clinic and occupational therapy department. (R. 199-214).

In August 2003, Murphy complained of thumb pain radiating to her shoulder. (R. 193). An MRI of Murphy's cervical spine revealed "[m]ultiple level degenerative change[s] and bulging disks" of the cervical and thoracic spine. (R. 188-189). The MRI also showed central disc herniation at T1-2 and C4-5 as well as a bulging disc bilaterally at C6-7. (R. 188).

In October 2003, Murphy received treatment in the emergency room at Michael

4

Reese Hospital for a headache and cervical spasm. (R. 220).

The record also contains an undated note from UIC's Pain Management Clinic which references Complex Regional Pain Syndrome. (R. 216). However, that record does not have claimant's or any other patient's name on it. (*Id.*).

**Claimant's Testimony**

Claimant testified that she was thirty-seven years old at the time of the hearing. (R. 226). She is right-handed. (R. 227). Claimant has a high school education and completed some college. (R. 228). She was employed from 1988 to April 2001. Murphy worked as a sales person, receptionist, weight control counselor, kitchen supervisor, billing and filing clerk and cashier. (R. 228-235).

Murphy worked at Old Navy from sometime in 2000 until April 2001 when she injured her thumb. (R. 235). She was off for six weeks and returned to work until she had surgery in November 2001. (*Id.*). After her surgery, Murphy returned to work in May 2002 but was terminated in June 2002. (*Id.*).

At the time of the hearing, she was working as a housekeeper for her disabled sister. (R. 236). Claimant worked for her sister from July 2002 until February 2003, when she had her second surgery. (*Id.*). Murphy returned to work for her sister in June 2003 and was still working for her sister at the time of the hearing. (R. 236-237). She worked forty hours a week doing light house work that included some cooking, mopping, light sweeping, cleaning and dish washing. (R. 237-238, 241). Murphy admitted that she uses her right hand somewhat for some of those tasks. (R. 238). She testified however, that she has a difficult time with the job because she experiences pain and has to repeatedly put on and

take off her brace between tasks. (R. 237, 241-242). Claimant explained that her niece and boyfriend do all of the housework for her at home because she is too tired after working for her sister. (R. 243). She also testified that she works at a slower pace, that she needs four 20-minute breaks a day and that she can no longer do her sister's laundry, grocery shopping or errands. (R. 242, 245). Furthermore, Murphy testified that she misses work one to two days per week but that her sister allows her to make up the missed time on the weekends. (R. 243).

Murphy testified that she uses her brace to alleviate pain. (R. 244). She also takes a sleeping pill to help her sleep and Trimadol to help the pain in her shoulder and neck. (*Id.*). Claimant complained that the medication causes dryness. (*Id.*).

The ALJ questioned Murphy as to whether she believed that she could return to work as a weight control counselor. (R. 248). Murphy testified that she did not think she could return to that job because the job requires carrying and stacking boxes as well as documentation beyond her writing capabilities. (R. 248-49). The claimant testified that she can only write for three to five minutes before she needs to stop due to tightness in her hand and bulging of the wrist. (R. 249). She further testified that when she was a weight control counselor, she had to write for five to seven minutes at a time. (R. 252).

**Vocational Expert's Testimony**

Julie Bose testified as the vocational expert ("VE") at the hearing. (R. 246). The ALJ asked the VE if a person of claimant's age, education, and work background, with the following conditions could perform any of claimant's past work: the person was right-handed and could frequently lift and carry ten pounds, though less than five pounds with the right hand; occasionally lift and carry twenty pounds; push or pull twenty pounds; stand,

walk, or sit for six hours out of an eight-hour day; the person could only use his or her right hand for gross and fine manipulation for less than one third of the day; the person could not perform any production rate work and required four, 20-minute breaks per day. (R.247-248). The VE testified that all of Murphy's past jobs would be eliminated except the weight control counselor position. (R. 248).

The VE testified that four, 20-minute breaks per day would decrease the number of available weight control counselor positions by ten percent but would not eliminate the position. (R. 248). However, the VE testified that all jobs would be eliminated if the person missed work one to two times in a five-day week. (R. 253).

## LEGAL ANALYSIS

### Standard of Review

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chafer,* 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000)). We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion,"

he need not discuss every piece of evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [his] assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985)).

**Analysis Under the Social Security Act**

A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176. The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter,* 245 F.3d 881, 885-86 (7th Cir. 2001).

The ALJ followed this five step analysis. At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of disability. (R. 11, 13).[1] At step two, the ALJ found that Murphy suffered from degenerative disc

---

[1] The ALJ did not explain why he found that claimant's work as a housekeeper for her sister did not constitute substantial gainful activity.

disease involving the cervical and thoracic spine with herniated discs and was status post right thumb surgery with chronic pain. (R. 11, 13). ALJ McGuire found these impairments to be "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c). (*Id.*). At step three, the ALJ found that while the claimant's impairments were "severe," they were not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 11-13). Therefore, the ALJ moved onto step four to analyze the vocational factors to determine whether Murphy could perform her past relevant work.

At step four, ALJ McGuire found that Murphy retained the residual functional capacity ("RFC") to perform the requirements of her past relevant work as a weight control counselor. (R. 12-13). The claimant argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ only considered portions of the medical evidence and because the claimant's physical capabilities are not consistent with the demands of her past relevant work as a weight control counselor. Murphy also argues that the ALJ erred in failing to explain the basis for his credibility finding.

**The ALJ's RFC Determination**

The ALJ found that Murphy has the RFC for: lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting, standing and/or walking up to six hours in an eight-hour work day; pushing and pulling up to twenty pounds in a work environment exclusive of lifting or carrying over five pounds with the right hand; using the right hand for fine or gross manipulation more than one third of a work day and production rate measurements. (R. 12). The ALJ further found that the claimant's past relevant work as a weight control counselor did not require performance of work-related activities precluded

9

by her RFC.  (R. 13).

Murphy argues that the ALJ's finding that she has the RFC to return to work as a weight control counselor is not supported by substantial evidence.  In particular, she contends that the ALJ erred in only considering portions of the medical evidence and by focusing solely on aspects of the treatment that showed improvement .  The Court agrees. An ALJ is not required to address every piece of testimony and evidence.  *Carroll v. Barnhart*, 291 F. Supp. 2d 783, 798 (N.D. Ill. 2003) (quoting *Stephens v. Heckler*, 766 F. 2d 284, 287 (7th Cir. 1985)).  However, an ALJ may not select and discuss only that evidence which favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning. *Diaz*, 55 F.3d at 307.

Here, the ALJ only discussed evidence that showed improvement in the claimant's condition and her release to return to work.  (R. 12).  The ALJ noted that the claimant had an additional surgery on January 31, 2002, but stated that "there is nothing to show that since largely recovering from the surgery performed in November 2002 that the claimant was ever precluded from a substantial range of even light work for the requisite period of time."  As an initial matter, both of the ALJ's dates are incorrect.  Claimant's first surgery occurred in November 2001 and her second surgery occurred in January 2003.  Further, the ALJ failed to discuss the lengthy history of physical therapy or the records detailing claimant's limitations and ongoing treatment for pain following the November 2001 surgery.

The ALJ also failed to discuss the records noting complaints of pain radiating to Murphy's shoulder which prompted her physician to order an MRI of the cervical spine.  (R. 193).  That MRI revealed Murphy's degenerative disc disease, with several bulging and

herniated disks. (R. 188). The ALJ's opinion did not address the effect that claimant's degenerative disc disease has, alone or in combination with her thumb injury, on her ability to work.[2]

Murphy also argues that the ALJ failed to consider her testimony that the writing required to work as a weight control counselor exceeded her capabilities. She testified that she can only write for three to five minutes before she has to stop due to tightness in her hand and bulging of the wrist. (R. 249). The ALJ's opinion did not discuss this testimony. Furthermore, the ALJ disregarded claimant's testimony and the VE's testimony about absenteeism. Murphy testified that she misses work one to two days per week. (R. 243). The VE testified that all jobs would be eliminated if a person missed work once or twice a week. (R. 253). Again, the ALJ failed to address this testimony or explain why he rejected the testimony. If the ALJ found that Murphy's testimony about her writing capabilities or her absenteeism lacked credibility, he should have made that clear.

Because the ALJ did not consider all of the medical evidence and because he rejected testimony of the VE and the claimant without explanation, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion. Accordingly, the ALJ's RFC finding is not supported by substantial evidence and remand is warranted. On remand, the ALJ must sufficiently articulate his analysis of the medical evidence and the testimony at issue to allow the reviewing court to trace the path of his reasoning. *Diaz*, 55 F.3d at 307.

---

[2] Murphy also argues that the ALJ disregarded the impact of complex regional pain syndrome ("CRPS"). However, the alleged CRPS diagnosis contained in the record has neither claimant's name, nor the date on the exhibit. (R. 216). Therefore, we find that the ALJ did not err in disregarding it.

**The ALJ's Credibility Finding**

Next, Murphy contends that the ALJ's credibility determination is not supported by the evidence. To succeed on this ground, Murphy must overcome the highly deferential standard that we accord credibility determinations. Because the ALJ is best positioned to evaluate the credibility of a witness, we reverse the ALJ's credibility finding only if it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, an ALJ must comply with the requirements of Social Security Ruling 96-7p in evaluating the credibility of statements supporting a Social Security application. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Under SSR 96-7p, the ALJ must articulate the reasons behind his credibility finding:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible". . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here, the ALJ did not clearly articulate the reasons behind his credibility finding. Indeed, in the findings section of his opinion, the ALJ stated that "the undersigned finds that to the extent the claimant alleges she is disabled from substantial gainful activity at any level, she is not totally credible for the reasons set forth in the body of the opinion." However, the ALJ never set forth the reasons for his credibility finding in the body of the opinion. Accordingly, remand is appropriate. *Brindisi*, 315 F.3d at 788.

Furthermore, in evaluating a claimant's complaints of pain, SSR 96-7p requires the ALJ to consider whether there is an underlying "determinable physical or mental impairment

that could reasonably be expected to produce the symptoms." SSR 96-7p; *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004). Once this has been established, the ALJ must further evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" in order to determine whether those symptoms "affect the individual's ability to do basic work activities." *Id.* The ALJ must consider the credibility of the claimant in light of "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.*

The Court finds that the ALJ failed to consider the claimant's credibility in light of the entire case record. In particular, while the ALJ outlined some of Murphy's medical history, he did not evaluate all of the medical evidence. Further, the ALJ outlined the activities Murphy engages in as a housekeeper for her sister but he did not discuss other pertinent parts of her testimony. Indeed, the ALJ never discussed Murphy's claim that she misses work two days per week or her claim that she cannot write for more than three to five minutes.

Because the ALJ failed to comply with the requirements of SSR 96-7p, the ALJ's credibility determination cannot stand. *See Brindisi*, 315 F.3d at 788. On remand, the ALJ must set forth specific reasons for his finding in accordance with SSR 96-7p. Additionally, the ALJ must consider the following in evaluating Murphy's reported symptoms: Murphy's daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; her course of treatment; any treatment other than medication that Murphy

uses or has used to relieve her symptoms; and any other factors concerning her functional limitations and restrictions due to her pain or other symptoms.

**New and Material Evidence**

Murphy also argues that new medical evidence of continuing pain treatment and a diagnosis of CRPS warrants remand pursuant to sentence six of 42 U.S.C. § 405(g). Sentence six of § 405(g) permits the court to remand a case for further consideration "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Sample v. Shalala*, 999 F. 2d 1138, 1144 (7th Cir. 1993). To prevail on this issue, Murphy must establish that the evidence satisfies the requirements of newness, materiality, and good cause. *Id.*

Materiality requires "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Id.* However, evidence is not material if it addresses only a claimant's condition after the ALJ issued his decision. *Chapman v. Barnhart*, 189 F. Supp. 2d 795, 805 (N.D. Ill. 2002). Indeed, the Seventh Circuit has held that medical records "postdating the hearing" and that "speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration" do not meet the standard for new and material evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citing *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1989)).

The Commissioner contends that the new evidence at issue is not material because it pertains to Murphy's condition after the ALJ's decision and therefore, it is not relevant to the time period reviewed by the ALJ. The Court agrees. The treatment records from

14

Northwestern Medical Center pertain to the claimant's condition after the ALJ's decision. The records do not reflect Murphy's condition at the time her application was under consideration by the Commissioner. *Schmidt*, 395 F.3d at 742. Moreover, the Court finds that the claimant has failed to demonstrate a "reasonable probability" that the ALJ would have reached a different conclusion had this evidence been considered. Because Murphy failed to establish that the new evidence is material, her motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) is denied.

## CONCLUSION

For the reasons set forth above, Murphy's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. Murphy's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion. It is so ordered.

ENTER:

_____

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: February 15, 2006**